**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**JOHN YARBERRY,**

                 **Plaintiff,**

**v.**                                     **Case No. 1:12-cv-611-HJW**

**GREGG APPLIANCES, INC.,**

                 **Defendant**

### ORDER

       Pending are the parties' cross-motions for summary judgment (doc. nos. 40, 41). Pursuant to this Court's Order (doc. no. 12), the proponent of each motion has filed proposed findings of fact and conclusions of law, which the opponent has highlighted as true, false, or irrelevant (doc. no. 47 at 19-33, defendant's highlighting; doc. no. 48-1 at 1-13, plaintiff's highlighting). After hearing oral arguments, and after additional "supplemental" briefing, the Magistrate Judge entered a Report and Recommendation ("R&R") on April 8, 2014, recommending that defendant's motion be granted, and that plaintiff's motion be denied (doc. no. 56). Plaintiff sought, and was granted, leave to file "excess pages." Plaintiff then filed objections (doc. no. 61), and defendant responded (doc. no. 62). Having fully considered the record, including the parties' briefs, exhibits, proposed findings, objections, and applicable authority, the Court agrees with the Magistrate Judge's recommendations. The Court will therefore <u>overrule</u> the objections, <u>adopt</u> the R&R, <u>grant</u> the defendant's motion, and <u>deny</u> the plaintiff's motion, for the following reasons:

1

## I. Background

The Magistrate Judge has already recited the facts of this case in considerable detail (doc. no. 56 at 1-7), and those facts are incorporated herein by reference. Notably, the parties do not dispute the relevant facts. Rather, they dispute each other's proposed conclusions of law.

To summarize, plaintiff John Yarberry ("Yarberry") was hired on October 25, 2010, to work for defendant Gregg Appliance, Inc. ("hhgregg") as a sales associate in Cincinnati, Ohio. In February 2011, he entered the company's manager-in-training program. After finishing such training, he became an "Electronic Sales Manager." He subsequently accepted a transfer to the position of Appliance Sales Manager at the store in Cranberry, Pennsylvania. He received hhgregg's Associates Handbook and acknowledged in writing that "I understand that as a term and condition of my employment, I am to comply with and abide by the policies in the handbook" (doc. no. 43-1 at 33).

On August 1, 2011, he worked his first day at the Cranberry store. That evening, at 12:38 a.m. (i.e. early on August 2), Yarberry sent the first of several text messages to Regional Manager Brett Edger. At approximately 2:15 a.m., Yarberry entered the store while it was closed, disarmed the alarm, and locked himself inside. He proceeded to the manager's office, accessed the store safe, roamed around the store, played games or watched videos on store computers for several hours, and attempted to sleep on a Tempur-Pedic display mattress. Yarberry remained inside the store into the early hours of August 2, 2011. He sent additional

text messages to Mr. Edger at 2:23 a.m., 2:28 a.m., and 3:55 a.m. The gist of these messages is that he was "stressed out" by personal problems (from moving and getting engaged) and was at the store because he couldn't sleep.[1]

For example, in his 2:28 email, Yarberry stated "hey man, my fiancé is driving me crazy over every little dollar I've spent this week." He complained that he couldn't use the spa at the hotel where he was staying and that he couldn't fall asleep (doc. no. 36-1 at 1). He closed by saying "call me if you need me." In his email at 3:55 a.m., he stated "I'm at the store because I can't sleep" and "I'm gonna leave the store now and I might screw up the alarm" (Id. at 2). He closed his email by saying "call me when you wake up and we'll get coffee."

When Mr. Edger first read Yarberry's messages at 6:00 a.m. that morning, he became concerned and tried to reach Yarberry by telephone. Yarberry responded by text message at 6:14 a.m., asking Edger to call him. At 6:35 a.m., Yarberry tried to leave the store without re-arming the alarm. He sent an email to five employees, indicating that "the alarm is going off because I don't know how to stop it" (doc. no. 36-1 at 3). He panicked and left the store with the alarm sounding. Between 6:38 a.m. and 7:21 a.m., Edger and Yarberry texted back and forth several times. Yarberry indicated he was sleep-deprived, was sick, and was not coming in to work. In response, Edger suggested that Yarberry seek medical attention if he thought he needed it.

---

[1] At deposition, Yarberry was asked about his telephone conversation with his counselor, Ms. DiSantis, on August 1, 2011( Yarberry Dep. at 90 "Q: She reports that you stated that you were distraught over your relationship. Any reason to dispute that? A: No.").

Todd Zimmerman, the National Asset Protection Manager for hhgregg, was alerted about Yarberry's behavior. After viewing surveillance video footage of the incident, Zimmerman advised Edger to contact Yarberry about taking a drug screen test. Edger did this, but Yarberry refused (responding "No" by text message). Zimmerman then telephoned Yarberry to speak with him and investigate the situation. According to Zimmerman, Yarberry said that Edger "stressed" him out. Zimmerman indicates that Yarberry refused to stop talking and refused to cooperate with the investigation. Zimmerman, who suspected Yarberry might be intoxicated, suspended Yarberry's employment pending further investigation. He asked HR to arrange a drug screen test. That afternoon at 2:50 p.m., Yarberry took such test, with negative results (doc. no. 36-1 at 9). When Edger tried to contact Yarberry by phone about the test, Yarberry hung up on him (doc. no. 36 at 36).

At 12:22 p.m. on August 3, 2011, Zimmerman sent the report of his investigation to Ms. Cynthia Bush, Associate Relations Manager for hhgregg. His report recommended that Yarberry not have access to any stores because he had not used his access responsibly and had refused to cooperate in the investigation. Ms. Bush reviewed this report, Yarberry's emails and text messages, and his personnel file. She determined that Yarberry should be discharged because his afterhours behavior in the store and failure to cooperate in the investigation demonstrated a lack of professional judgment and violated various company policies. (Bush Dep. at 62 "Q: It was your decision? A: That was my decision.").

She did not determine the cause of his conduct. At 1:03 p.m. on August 3, 2011, she sent an email to Edger, advising him that Yarberry should be discharged. She provided the necessary paperwork. Mr. Edger attempted to personally advise Yarberry of his termination but was unable to reach him. He then completed the termination paperwork at 4:52 p.m. that day.

At 5:00 p.m. the same day, Yarberry sent an email to several employees (but not to Ms. Bush, Mr. Edger, or Mr. Zimmerman) apologizing for his behavior and advising that he was now hospitalized in the Western Psychiatric Institute and Clinic. He did not mention any diagnosis.

The termination letter of August 3, 2011 went out the next morning by "overnight mail." It specifically indicated that Yarberry had been terminated for disarming the store at 2:15 a.m., locking himself in the building, entering the safe, playing on computers, and failing to cooperate in hhGregg's investigation, in violation of "the company's detrimental behavior, failure to cooperate, safety and other policies, procedure and practices" (doc. no. 36-1 at 11, 22).

On August 8, 2011, plaintiff's father sent an email to various employees (but again, not to Ms. Bush, Mr. Edger, or Mr. ZImmerman) stating that Yarberry might be released from the psychiatric hospital in a few days, but mentioning no diagnosis. After a manager forwarded the email to HR, Ms. Bush telephoned Yarberry's father to advise that Yarberry's employment had already been terminated (doc. no. 48-1, ¶ 38).

Plaintiff was released on August 12, 2011. That day, psychiatrist Dr. Michael

Marcsisin sent Ms. Bush a letter, indicating that Yarberry had been committed for treatment of a "manic episode." He opined that it had started in mid-July, resulted from Bipolar I Disorder, and that the manic episode "likely led to his unusual behaviors." On August 16, 2011, Yarberry asked to be reinstated based on the doctor's letter.[2] Ms. Bush advised him that the termination decision stood.

Plaintiff filed a charge of disability discrimination with the EEOC on November 16, 2011 (doc. no. 43-1 at 1-2). Plaintiff received a Notice of Rights letter from the EEOC on July 2, 2012 (Id. at 3). On August 10, 2012, Yarberry filed a one-count federal complaint, alleging "disability discrimination" under the Americans with Disabilities Act ("ADA"), at 42 U.S.C. § 12112.[3] He seeks compensatory and punitive damages, attorney fees, costs, and other relief. After discovery concluded, the parties filed cross-motions for summary judgment. Both motions, as well as the plaintiff's objections to the R&R, have been extensively briefed and are ripe for consideration.

II. Summary Judgment

Rule 56(a) of the Federal Rules of Civil provides in relevant part:

> A party may move for summary judgment, identifying each claim or defense or the part of each claim or defense on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

---

[2] Dr. Marcsisin recommended that Yarberry not return to work until August 29, 2011 (doc. no. 38 at 30).

[3] To be considered timely filed, a civil action in federal court must be filed within 90 days of plaintiff's receipt of a right to sue letter. 42 U.S.C. § 2000e–5(f)(1).

Rule 56(c)(1) further provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Under Rule 56, the moving party bears the burden of proving that no genuine dispute of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. Id. at 587. A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991) ("The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material

facts. Rather, the court must evaluate each party's motion on its own merits"). When considering cross-motions, the Court must "tak[e] care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Id. at 248.

The Supreme Court has emphasized that courts must distinguish between evidence of disputed material facts and mere "disputed matters of professional judgment," i.e. disagreement as to legal implications of those facts. Beard v. Banks, 548 U.S. 521, 529 30 (2006). In the present case, the parties do not dispute the relevant facts, only the legal implications of those facts. Both sides claim they are entitled to judgment as a matter of law.

III. Relevant Law

The ADA provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); and see, Lewis v. Humboldt Acquisition Corp., Inc., 681 F.3d 312 (6th Cir. 2012) (en banc) (employee must show that disability was a "but-for" cause of his termination).

As the Magistrate Judge correctly stated, a plaintiff may proceed with direct or indirect evidence. To establish a prima facie case of disability discrimination with indirect evidence, a plaintiff must establish that he is (1) disabled; (2) otherwise qualified for the position, with or without reasonable accommodation;

8

(3) suffered an adverse employment action; (4) that the employer knew or had reason to know of his disability; and (5) the position remained open or he was replaced by a non-disabled employee. Rosebrough v. Buckeye Valley H.S., 690 F.3d 427, 431 (6th Cir. 2012); Burdett-Foster v. Blue Cross Blue Shield of Mich., 2014 WL 3719111, *8 (6th Cir. (Mich.)). An individual is considered "disabled" under the ADA if he (1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) has a record of such impairment; or (3) is regarded by his employer as having such an impairment. 42 U.S.C. § 12102(2).

The "ADA Amendments Act of 2008" ("ADAAA"), effective January 1, 2009, changed the way courts review "regarded as" claims. Under the ADAAA, the regulations provide that an individual is "regarded as having such an impairment" if he is subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity. 29 C.F.R. § 1630.2(l)(1). When a plaintiff is "regarded as" disabled by his employer, the employer is not required to consider reasonable accommodations. 42 U.S.C. § 12201(h); see Baker v. Windsor Republic Doors, 414 Fed. Appx. 764, 776 (6th Cir. 2011) (when a plaintiff relies upon the "regarded as" prong, an employer's responsibility to offer reasonable accommodation is obviated). Congress intended this legal theory to address individuals who are "regarded as" disabled, but in reality, are not (and therefore can perform the essential functions of their job without accommodation).

9

If a plaintiff establishes a prima facie case, the burden of proof shifts to the defendant to articulate legitimate, nondiscriminatory reasons for the adverse action. Plaintiff must then point to evidence that the proffered reasons are merely a pretext for discrimination. Harris v. Metro. Gov. of Nashville & Davidson Cty., 594 F.3d 476, 486 (6th Cir. 2010).The ultimate burden of persuasion rests at all times with plaintiff.

## IV. The Parties' Motions and the Magistrate Judge's Recommendations

### A. Plaintiff's Arguments on Summary Judgment

Plaintiff does not dispute any proposed findings of fact and acknowledges that he engaged in the conduct Ms. Bush cited as the basis for his termination (Yarberry Dep. 79-81). In his motion, he contends that "the only questions for the Court to decide are questions of law—whether HH Gregg denied Yarberry a reasonable accommodation for his disability, and whether HH Gregg terminated Yarberry for abnormal behavior caused by bipolar disorder in violation of the ADA" (doc. no. 40 at 6). He contends that his "disability-caused conduct ... cannot be a legitimate, non-discriminatory justification for termination" (Id. at 34). Plaintiff moves for partial summary judgment on liability and asks for trial on damages.

### B. Defendant's Arguments on Summary Judgment

Defendant HH Gregg also moves for summary judgment, asserting that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law. Defendant asserts that:

> Plaintiff cannot establish that hhgregg discriminated against him based on a disability. The lone and undisputed decision-maker

10

> **had no knowledge that plaintiff had Bipolar Disorder when she made the termination decision, nor did she otherwise regard him as impaired or substantially limited. All she knew, and all she considered, was that his behavior should not be tolerated (or excused). Plaintiff cannot show that her exclusive focus on his behavior – as distinct from anything that may have caused it – is an illegitimate basis for her decision or that it is pretextual. Nor can he show that ignoring or excusing his misconduct is a reasonable accommodation to which he was entitled.**

**(doc. no. 42 at 20).**

       <u>**C. The Magistrate Judge's Recommendations**</u>

       **The Magistrate Judge considered, and rejected, the suggestion that this case involves direct evidence of disability discrimination. The termination letter referred only to Yarberry's misconduct and violations of company policy, and no other evidence referred to any "disability" when he was discharged. Plaintiff's motion had merely alleged that his termination for misconduct amounted to "direct" evidence because his behavior was allegedly due to "disability." The Magistrate Judge aptly observed that "plaintiff's contention requires the Court to reach a conclusion by making an inference" (doc. no. 56 at 13). By definition, direct evidence is "evidence that proves the existence of a fact without requiring any inferences." <u>Rowan v. Lockheed Martin Energy Sys., Inc.</u>, 360 F.3d 544, 548 (6th Cir. 2004). "Direct evidence of discrimination does not require a fact finder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." <u>Johnson v. Kroger Co.</u>, 319 F.3d 858, 865 (6th Cir. 2003). The Magistrate Judge pointed out that "the Sixth Circuit has distinguished between discharging**

someone for unacceptable misconduct and discharging someone because of the disability, allowing that only the latter violates anti-discrimination statutes" (doc. no. 56 at 13). She indicated that this legal distinction was outcome determinative in this case (Id. at 12).

As plaintiff argued that he could establish his ADA claim based on circumstantial evidence, the Magistrate Judge considered the burden-shifting analysis for indirect evidence. She found that "the record does not indicate that Bush was aware of plaintiff's Bipolar Disorder at the time she made the termination decision" (Id. at 14). The Magistrate Judge found that plaintiff had failed to establish the fourth step of the prima facie case, i.e., that the employer knew or had reason to know of such disability (Id. at 15-19). The Magistrate Judge found that hhgregg had articulated legitimate non-discriminatory reasons for terminating plaintiff (as plainly stated in the termination letter). She also found that plaintiff was terminated for misconduct prior to ever notifying the employer of any alleged disability (Id. at 20). Finally, the Magistrate Judge found that plaintiff had not pointed to any evidence of pretext, and therefore, recommended that hhgregg was entitled to summary judgment.

## V. Review of Objections

The Magistrate Judge Act, 28 U.S.C. § 631 et seq., provides for *de novo* review by the district court when a party timely files written objections to a Magistrate Judge's Report and Recommendation. The objections must be *specific*; generalized objections that do not "specify the issues of contention" are not

12

sufficient to satisfy the requirement of specific objections. Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995); Howard v. Sec. of HHS, 932 F.2d 505, 508-09 (6th Cir. 1991).

## VI. Plaintiff's Objections

Plaintiff generally objects to the entire R&R, arguing in broad terms that "the Magistrate's decision ignored the 2008 amendments to the Americans with Disabilities Act and a vast body of case law concerning the treatment of an employee's disability-caused conduct (doc. no. 61 at 1-2). Such generalized argument fails to satisfy the requirement that a party's objections be *specific*. See, e.g., Holl v. Potter, 2011 WL 4337038 (S.D.Ohio) (J. Weber) (observing that general objections "are not sufficient to preserve an issue for review and a general objection to the entirety of the Report is the same as no objection"), aff'd by 506 Fed.Appx. 428 (6th Cir. 2012). The defendant points out that the plaintiff "inappropriately seeks a complete do-over by rehashing all of his prior arguments" and that "the bulk of plaintiff's Objections are nearly verbatim excerpts from his prior briefs interspersed with a few conclusory statements that the Magistrate incorrectly accounted for those prior arguments" (doc. no. 62 at 1-2). The Court has reviewed the plaintiff's lengthy objections and agrees that they largely repeat prior arguments and lack the requisite specificity to be considered as proper objections. See, e.g., Miller, 50 F.3d at 380. Even if considered, the plaintiff's objections lack merit.

For example, plaintiff repeats his prior conclusory assertion that he was fired for misconduct, that such misconduct was "caused by his disability," and

that this therefore amounts to "direct evidence" (doc. no. 61 at 3). In this generalized objection, plaintiff does not point to any specific error in the Magistrate Judge's analysis. Plaintiff cites two cases from other circuits, but does not address the binding decisions from the Sixth Circuit Court of Appeals cited by the Magistrate Judge (doc. no. 56 at 13). The Magistrate Judge correctly found that this case did not involve "direct evidence. See, e.g., <u>Bailey v. Real Time Staffing Services, Inc.</u>, 543 Fed.Appx. 520 (6th Cir. 2013) (rejecting plaintiff's argument that being fired for "manifestation of a disability" amounted to "direct evidence" and observing that plaintiff was "trying to fit a square peg into a round hole"). The pre-termination emails regarding plaintiff refer only to his inappropriate behavior, not to any actual or perceived "disability." In his objections, plaintiff has not shown that the Magistrate Judge disregarded any "direct" evidence. Such objection lacks merit.

The Court observes that the Magistrate Judge addressed the legal implications of the undisputed facts and the parties' disagreement as to the law of this Circuit. She indicated that "the Sixth Circuit has distinguished between discharging someone for unacceptable misconduct and discharging someone because of the disability, allowing that only the latter violates anti-discrimination statutes" (doc. no. 56 at 13). She indicated that this legal distinction is outcome determinative in this case (<u>Id</u>. at 12). Plaintiff disagrees with this interpretation of the law and repetitively raises this same argument at several stages of the burden-shifting analysis (doc. no. 61 at 3, 18-24). The Magistrate Judge therefore

14

addressed this issue again later in the analysis, and the Court will do the same.

Plaintiff makes a generalized "objection" to the Magistrate Judge's entire analysis of the burden-shifting evidentiary framework. He initially states that "HH Gregg conceded that Yarberry can establish the first, second, third, and fifth" steps of his prima facie case (doc. no. 61 at 3). This is not correct. Defendant expressly did _not_ concede the first step (see doc. no. 42 at 15, fn. 8 indicating "hhgregg does not concede that plaintiff is, in fact, disabled within the meaning of the ADA").[4] Defendant points out that Yarberry himself explained in his emails that he was sleep deprived and "stressed out" from moving and/or personal problems (Yarberry Dep. 59, 70-72).

To the extent plaintiff alternatively argues at the first step that hhgregg may

---

[4] Although plaintiff claims he is "disabled" based on the post-termination diagnosis of "bi-polar disorder" in Dr. Marcsisin's letter of August 11, 2011 (doc. no. 35, Yarberry Dep. at 103), he acknowledges he was released August 12th and did not see this psychiatrist again (Id. at 92, "Q: Since you were released from that facility, have you been back to see him at all? A: No."). He testified that he took medication (with one refill) for only two months (Id. at 99, "Q: So you were really on it from early August 8 to early October of 2011? A: Yes. Q: And then stopped? A: Yes."). After returning to Cincinnati, plaintiff consulted in April 2012 with Dr. Richard Brown and a social worker, both of whom disagreed with the "bi-polar" diagnosis (Id. at 94-95 "Q: Now, neither of them diagnosed you as having bipolar disorder, did they? A: No. Q: In fact, they said you were having an adjustment reaction? A: Yes." and at 97-98 "Q: [Dr. Brown] didn't agree with the diagnosis? A: Right."). Plaintiff testified that he has seen no other doctor for this alleged condition, takes no medication for it, has had no other manic episodes since 2011, and is gainfully employed (Id. at 96, 100-101). He acknowledged at deposition that he did not know if he actually had such disorder (Id. at 99-100, "Q: So if Marcsisin said you had bipolar, Brown says you don't, do you know whether you have bipolar? A: I don't know."). Even under the broadened coverage of the ADAAA, the record suggests that plaintiff's prima facie case fails at the very first step. In any event, the Magistrate Judge proceeded further and found that plaintiff's case failed at later stages of the analysis.

have "regarded" him as disabled based on his inappropriate behavior on August 2, 2011, the ADA expressly provides that the "regarded as" prong "shall not apply to impairments that are transitory and minor." 42 U.S.C. § 12102(3)(B) ("A transitory impairment is an impairment with an actual or expected duration of 6 months or less."). In response to the objections, defendant correctly points out that "impairments that last only for a short period of time are typically not covered" (doc. no. 62 at 19, fn. 5) (citing 29 C.F.R. § 1630).

Proceeding to step four, the Magistrate Judge correctly found that Ms. Bush did not have knowledge of Yarberry's alleged "disability due to bi-polar disorder" when she made the decision at 1:03 p.m. on August 3, 2001, to terminate his employment. See <u>Bailey v. Real Time Staffing Services, Inc.</u>, 543 Fed.Appx. 520, 524 (6th Cir. 2013) (employer could not have fired employee because of his HIV because it simply did not know he had HIV). The undisputed evidence reflects that Ms. Bush considered Yarberry's misconduct and that she had not been advised of any purported "disability" when she made her decision. Her email about the termination decision refers only to Yarberry's inappropriate behavior, not any impairments or disability. Defendant asserts that the Magistrate Judge "properly declined to fault hhgregg for its inability to diagnose a disabling condition from plaintiff's observable erratic behavior" (doc. no. 62 at 9). See <u>Burns v. City of Columbus</u>, 91 F.3d 836, 844 (6th Cir. 1996) (affirming summary judgment to employer on disability discrimination claim where there was no evidence that the decision makers had any knowledge of plaintiff's disability); <u>Green v. Burton</u>

16

Rubber Processing, Inc., 30 Fed.Appx. 466 (6th Cir. 2002) (affirming summary judgment for defendant employer, and observing that "[i]f an employer fires an employee because of the employee's unacceptable behavior, the fact that the behavior was precipitated by a mental illness does not present an issue under the [ADA]") (quoting Palmer v. Cir. Court of Cook Cty., 117 F.3d 351, 352 (7th Cir. 1997)). Although plaintiff contends that hhgregg "should have known" he was mentally "disabled" based on his "symptoms" on August 2, 2011 (doc. no. 61 at 13-18), it is undisputed that hhgregg was not informed of any alleged diagnosis of "bi-polar disorder" until August 12, 2011, over a week after his termination for misconduct.

After Ms. Bush made the termination decision, some employees at hhgregg subsequently received an email advising that Yarberry had been involuntarily committed. In his objections, plaintiff therefore attempts to use a later date of termination in an effort to utilize such subsequent information (doc. no. 61 at 1, 12). He claims that "Bush's August 3 decision was not a termination" (Id. at 12). This attempt to recast the undisputed evidence is without merit. Plaintiff relies on a statute of limitations case from another circuit in an attempt to attribute a later date of termination, suggesting that "hhgregg did not reach a final, nontentative decision until August 4, 2011" (Id. at 7, citing Spurling v. C&M  Fine Pack, Inc., 739 F.3d 1055 (7th Cir. 2014)). Plaintiff also speculates that a termination date of August 9, 2011 could be used, suggesting (without any evidence) that plaintiff may have received the termination letter in the mail five days later (Id. at 6-7, 12).

17

Plaintiff apparently seeks a presumption of five days mailing time, even though the record reflects that the letter was sent by overnight mail. Regardless, plaintiff's argument is without merit, and his reliance on <u>Spurling</u> is misplaced. Such case (which plaintiff discusses for the first time in his objections) pertains to the date a cause of action accrues for timeliness purposes, and in any event, is not binding here. As the defendant observes, plaintiff's "reliance on a statute of limitations analysis to determine a defendant's intent is not only conceptually flawed but inconsistent with Sixth Circuit law" (doc. no. 62 at 4). Plaintiff's attempt in his objections to "re-characterize" undisputed facts is unavailing. The plaintiff's objection is largely based on his own faulty premise about a later date of termination.

The Magistrate Judge correctly found that the relevant inquiry concerned the employer's intent at the time the decision to terminate was made. As the defendant points out, "the analysis of an employer's motive or awareness for purposes of an ADA claim properly centers on the time a challenged decision is made" (doc. no. 62 at 7). The Magistrate Judge correctly observed that it is undisputed that Ms. Bush made the decision that plaintiff's employment should be terminated. Although Yarberry was subsequently involuntarily committed, and hhgregg was thereafter advised of this via emails to several employees, the timing of these events is undisputed.[5]

---

[5] In his objections, plaintiff erroneously indicates that he was admitted to the psychiatric hospital on the morning of August 4, 2011. This is not accurate. The admission form plainly indicates "Date of Admission: August 3, 2011" (doc. no.

Plaintiff's objections needlessly recite many pages of undisputed facts (doc. no. 61 at 7-11), followed by the assertion that the Magistrate Judge "largely disregard the events and communications of August 4" (Id. at 11). On the contrary, the Magistrate Judge did not "disregard" such evidence. Rather, she gave appropriate consideration to the timing of the communications based on the undisputed evidence of record. Plaintiff's objection is generalized and meritless.

The Magistrate Judge found that, even assuming a prima facie case, hhgregg had articulated legitimate, non-discriminatory reasons for the discharge, i.e. plaintiff's after-hours misconduct in the store, his multiple violations of store policy, and his refusal to cooperate with Zimmerman's investigation (doc. no. 56 at 20). "[A]n employee's work violations constitute a legitimate, non-discriminatory reason for adverse employment decisions." Burdett-Foster, 2014 WL 3719111, *8 (quoting Walborn v. Erie Cty. Care Facility, 150 F.3d 584, 589 (6th Cir. 1998)); Laws v. HealthSouth N. Ky. Rehabilitation Hosp. Ltd. Partnership, 828 F.Supp.2d 889 (E.D.Ky. 2011) (holding that disruptive behavior in the workplace is a legitimate reason for discharge).

Plaintiff again makes a general objection to this recommendation and engages in a lengthy discussion of the ADA and case law from other circuits (doc. no. 61 at 18-24). Plaintiff frames the inquiry as follows: "must an employer tolerate certain behavior from a disabled person when that behavior is caused by the employee's disability?" (doc. no. 61 at 18). Plaintiff claims that "the Sixth Circuit

---

38-1 at 5).

has not definitively answered" this question. The defendant responds that it <u>has</u> (doc. no. 62 at 10). In fact, defendant points out that plaintiff himself has cited several such cases. See, e.g., <u>Macy v. Hopkins Cty. School Bd. of Educ</u>., 484 F.3d 357, 366 (6th Cir. 2007) ("an employer may legitimately fire an employee for conduct, even conduct that occurs as a result of a disability"); <u>Chandler</u>, 134 Fed. Appx. at 928-29 (employers are permitted to distinguish between misconduct and a disability to which that job-related misconduct is later attributed).

Although plaintiff contends that firing an employee for misconduct related to an alleged disability is tantamount to terminating an employee "because of" his disability, courts have repeatedly rejected this argument. See, e.g., <u>Sper v. Judson Care Center, Inc</u>., --- F.Supp.2d ----, 2014 WL 3108067, *6 (S.D.Ohio) (J. Beckwith). There, the Court explained that:

> the problem with Plaintiff's syllogism is that it has been squarely rejected by the Sixth Circuit. So long as the employee's misconduct is related to the performance of her job, an employer may discipline or terminate the employee even if her misconduct was caused by her disability. <u>Macy v. Hopkins County Sch. Bd. of Educ</u>., 484 F.3d 357, 366 (6th Cir. 2007) abrogated on other grounds by <u>Lewis v. Humboldt Acquisition Corp</u>., 681 F.3d 312, 315–16 (6th Cir. 2012) (en banc); <u>Brohm v. JH Prop., Inc</u>., 149 F.3d 517, 521 (6th Cir. 1998); <u>Maddox v. University of Tenn</u>., 62 F.3d 843, 847 (6th Cir. 1995) abrogated on other grounds by <u>Lewis v. Humboldt Acquisition Corp</u>., 681 F.3d 312, 315–16 (6th Cir. 2012) (en banc); <u>Chandler v. Specialty Tires of Am. (Tenn.), Inc</u>., 134 Fed.Appx. 921, 928–29 (6th Cir. 2005).

The record plainly reflects that hhgregg articulated legitimate non-discriminatory reasons for plaintiff's discharge. Plaintiff's objection lacks merit.

The Magistrate Judge concluded the analysis by recommending that

plaintiff had not shown that the stated reasons for plaintiff's discharge "had no basis in fact, did not actually motivate the decision, or were insufficient to motivate the decision to discharge him. Plaintiff acknowledges the applicable law for this step of the analysis (doc. no. 61 at 24). Plaintiff also acknowledges his behavior in the store. Given the video surveillance footage, he can hardly do otherwise. Given the undisputed evidence, plaintiff cannot show that the reasons for his discharge "had no basis in fact." Plaintiff also cannot show that his misconduct, violations of company policy, and refusal to cooperate in the investigation, did not actually motivate the decision or were insufficient to motivate the decision. As the defendant points out, "simply put, there are a host of reasons why hhgregg need not tolerate supervisory employees who disarm store alarms and wander around by themselves after hours without any business purpose (doc. no 62 at 11).

In his objection, plaintiff suggests that he can show pretext because hhgregg's "drug and alcohol" policy allegedly provided "more favorable treatment" to "non-disabled" employees because it afforded them a probationary chance to retain their job after a first positive drug screen (doc. no. 61 at 24). This argument, as defendant points out (doc. no. 62 at 12), ignores the fact that plaintiff violated multiple company policies. This objection lacks merit.

Plaintiff further objects that the Magistrate Judge allegedly "did not address Yarberry's claim that hhgregg failed to accommodate his disability" (doc. no. 61 at 26). The record refutes such allegation. The Magistrate Judge expressly indicated

that she considered plaintiff's ADA claim under alleged "disability discrimination" and/or "failure-to-accommodate" theories (doc. no. 56 at 12). Defendant points out that the Magistrate Judge "made the requisite factual findings and invoked the correct legal standards" to resolve plaintiff's ADA claim under both theories (doc. no. 62 at 13). Defendant points out that Yarberry made no actual requests for any accommodation while employed. See Sper, 2014 WL 3108067 at *7 (rejecting plaintiff's contention that her alleged "need for an accommodation was so obvious that she did not have to ask for one. Unfortunately for Plaintiff, however, that is not the law in this circuit"). The only statement by plaintiff that even vaguely resembles a request for any sort of "accommodation" during his employment with hhgregg was his statement in an email informing Mr. Edger that he was sick and wasn't coming to work that day. Mr. Edger appropriately responded that plaintiff should seek medical attention if he felt he needed it. Yarberry's post-termination emails sent to non-decisionmakers can hardly be considered as timely or reasonable requests for accommodation. The Magistrate Judge correctly indicated that to be liable under either theory, the plaintiff must have "informed his employer of his disability and requested an accommodation prior to ... the adverse action" (doc. no. 56 at 16, collecting cases); see, e.g., Rorrer v. City of Stow, 743 F.3d 1025, 1043 (6th Cir. 2014) ("prior to Rorrer's final termination, he sought two accommodations" from his employer). Plaintiff did not do so. Defendant points this out in its response to the objections (doc. no. 62 at 13).

To the extent plaintiff urges that hhgregg should have "accommodated" him

22

by "reconsidering" his discharge, plaintiff merely wants his former employer to excuse his past inappropriate behavior and violations of company policy. An employer is not required to tolerate or excuse disability-related misconduct as a reasonable accommodation. <u>Parsons v. Auto Club Group</u>, 2014 WL 1717025, at *3 (6th Cir. (Mich.)); <u>McElwee v. Cty. of Orange</u>, 700 F.3d 635, 645–46 (2nd Cir. 2012). Defendant has pointed out that even the EEOC's own materials provide that "an employer is not required to excuse past misconduct, even if it is the result of the individual's disability" (doc. no. 42, at 20, quoting from U.S. Equal Emp. Opportunity Comm'n, Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, question 36 (2002)). Plaintiff's objection lacks merit.

## V. Conclusion

Upon a de novo review of the record, and having considered the plaintiff's objections, the Court finds that the Magistrate Judge has accurately set forth the controlling principles of law and properly applied them to the particular facts of this case. The Court agrees with the Magistrate Judge's recommendations and adopts and incorporates by reference herein, the Report and Recommendation.

## VI. Oral Argument Not Warranted

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument. The parties have extensively briefed both motions (including supplemental briefs) and presented oral arguments at a hearing before the Magistrate Judge. They were given permission to file objections of "excess

page" length. The Court finds that oral argument on the objections is not warranted. <u>Himes v. United States</u>, 645 F.3d 771, 783-84 (6th Cir. 2011); <u>Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs</u>, 975 F.2d 300, 301-02 (6th Cir. 1992); <u>Schentur v. United States</u>, 4 F.3d 994, 1993 WL 330640 at *15 (6th Cir. (Ohio)) (observing that district courts may dispense with oral argument for any number of sound judicial reasons).

      Accordingly, the Court <u>OVERRULES</u> the plaintiff's "Objections" (doc. no. 61); <u>ADOPTS</u> the Magistrate Judge's Report and recommendation (doc. no. 56); <u>GRANTS</u> the defendant's "Motion for Summary Judgment" (doc. no. 41); and <u>DENIES</u> the plaintiff's "Motion for Partial Summary Judgment" (doc. no. 40). This case is <u>DISMISSED</u> and <u>TERMINATED</u> on the docket of this Court.

      IT IS SO ORDERED.

            <u>        s/Herman J. Weber        </u>
             Herman J. Weber, Senior Judge
             United States District Court